UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
EDGAR ACENCIO,

                Petitioner,                    **REPORT   AND**
                                                **RECOMMENDATION**
     - against -

                                            05 CV 1026 (NGG)
HAROLD MCKINNEY,

                Respondent.
----------------------------------------------------X

On February 24, 2005, petitioner Edgar Acencio, proceeding <u>pro se</u>, filed this petition for

a writ of <u>habeas corpus</u>,[1] pursuant to 28 U.S.C. § 2254, alleging that he received ineffective

assistance of counsel because his trial counsel: (1) failed to elicit helpful evidence during trial;

(2) failed to request certain jury instructions; (3) failed to object when the court did not issue an

alibi charge; (4) failed to request an intoxication instruction; (5) failed to move for severance; (6)

failed to adequately execute a defense of misidentification; and (7) delivered a summation that

was improper and failed to address evidence favorable to the petitioner. (Pet'n at 5, 6, 8; Rodi

Aff. ¶ 12).[2] Petitioner also complains that the State failed to prove its case beyond a reasonable

doubt and that the trial court erred in refusing to give the jury an alibi instruction. (Pet'n at 5, 8;

----

[1]Petitioner submitted a letter to the Court, dated October 7, 2006, in which he indicated that he is no longer incarcerated in the Mt. McGregor Correctional Facility. Indeed, the Website for the Department of Correctional Services indicates that the petitioner was released on parole on June 7, 2006. "Even though [Acencio] has been released on parole, he remains 'in custody' for <u>habeas</u> proceedings." <u>Dixon v. Miller</u>, 293 F.3d 74, 78 (2d Cir.) (internal citations omitted), <u>cert. denied</u>, 537 U.S. 955 (2002).

[2]Citations to "Pet'n" refer to the petition for a writ of <u>habeas corpus</u>, submitted by petitioner and dated February 14, 2005. Citations to "Rodi Aff." refer to the Affidavit of Assistant District Attorney ("ADA") Maria E. Rodi in Opposition to Petition for a Writ of <u>Habeas Corpus</u>, dated August 9, 2005.

Rodi Aff. ¶ 12).

By Order dated April 18, 2006, the petition was referred to the undersigned to prepare a Report and Recommendation.

## FACTUAL BACKGROUND

On September 26, 2002, at approximately 1:00 a.m., Mitsy Harmon was on her way home from her job in Stamford, Connecticut when she stopped at a payphone to get a number from information. (Tr. at 213).[3] The payphone, which was located approximately two blocks from her home, was on the corner of Stephen Street and Seneca Avenue, near a grocery store. (Id. at 214-15).

Petitioner and an accomplice, Angel Bonilla, were riding their bicycles when they saw Mitsy Harmon standing at the payphone. (Rodi Aff. ¶ 4; Tr. at 213-14). When Ms. Harmon first noticed petitioner and his co-defendant, they just rode past her. (Tr. at 214-15) When they came back, they pulled up to the payphone, and Angel Bonilla grabbed Ms. Harmon's shoulder bag, pulling her backwards. (See id. at 215-18). She testified that at the time Angel Bonilla grabbed her bag, petitioner was on her other side so that she was "[p]inned . . . in so [she] couldn't go in either direction." (Id. at 218). Bonilla told her to give him her bag, to which she responded, "Are you kidding?" (Id. at 218-19). At that point, Bonilla said, "No, I'm not kidding. I have a knife and I'll use it." (Id. at 219). He proceeded to show her a knife. (Id.) Petitioner was sitting on his bicycle at the time, positioned so Ms. Harmon could not move. (Id.) Once she gave them

---

[3]Citations to "Tr." refer to the transcript of trial proceedings held before Queens County, Supreme Court Justice Jaime A. Rios.

2

her bag, they fled the scene on their bicycles. (Id. at 220-21). After they left, Ms. Harmon called

911 and provided the police with a description of the robbers. (Id. at 221-22). When the officers

arrived in response to her call, Ms. Harmon told them that the men looked familiar, possibly

from the neighborhood, and that one had threatened her with a knife. (See id. at 223-24).

The day after the incident, September 27, 2002, Ms. Harmon called 911 again to report

that she had just seen the two men who had robbed her near her house. (See id. at 265-67). She

gave the police a description of what the men were wearing, but did not wait for the police to

respond to that location because she was afraid she would be late for work and might lose her

job. (See id. at 267, 275).

The following day, September 28, 2002, Police Officer Michael Sagarese drove Ms.

Harmon around the neighborhood in his van to see if she could recognize either of the men who

had robbed her. (Id. at 179-80, 225, 251). At the corner of Seneca Avenue and Norman Street,

Ms. Harmon identified petitioner's co-defendant, Angel Bonilla, as the man who had "attacked

[her]." (Id. at 180-81, 225, 258-59). At approximately 8:50 a.m., Bonilla was placed under

arrest by Officer Sagarese, who recovered a silver gravity knife from Bonilla's waistband. (Id. at

180-84, 205, 225-27). Ms. Harmon recognized the knife as the one used to threaten her on

September 26, 2002. (Id. at 226).

While other officers transported Bonilla to the precinct, Officer Sagarese and Ms.

Harmon continued to canvas the neighborhood, planning to return to the corner of Stephen and

Seneca so that Ms. Harmon could show the officer exactly where the attack had occurred. (Id. at

228-31). Approximately ten minutes later, back in the vicinity of Seneca and Norman, Ms.

Harmon recognized petitioner as the second man involved in the robbery. (Id. at 181-82, 229,

3

253). Petitioner was placed under arrest at that time. (Id. at 181-82, 253).

On or about October 10, 2002, petitioner and his co-defendant were indicted by a Queens County grand jury and charged with Robbery in the First Degree, in violation of New York Penal Law § 160.15[3]; Robbery in the Second Degree, in violation of New York Penal Law § 160.10[1]; and Criminal Possession of a Weapon in the Fourth Degree, in violation of New York Penal Law § 265.01[2]. (Rodi Aff. ¶ 5; Def.'s Br.[4] at ii).[5]

On March 6, 2003, petitioner was convicted of Robbery in the Second Degree following a jury trial before the Honorable Jaime A. Rios. (Rodi Aff. ¶ 6; Tr. at 462, 479-80). On June 17, 2003, petitioner was sentenced to a determinate prison term of three and one-half years, to be followed by post-release supervision. (Rodi Aff. ¶ 7).

In March 2004, petitioner appealed his conviction to the Appellate Division, Second Department, claiming that he was deprived of his right to effective assistance of counsel because his attorney failed to elicit helpful evidence, failed to request certain jury instructions, and delivered a summation that petitioner believed failed to address the evidence in support of his defense. (Id. ¶ 8).

On October 18, 2004, the Appellate Division affirmed petitioner's conviction. People v. Acencio, 11 A.D.3d 628, 782 N.Y.S.2d 656 (2d Dep't 2004). The court disagreed with petitioner's claim that he had received ineffective assistance of counsel. Id. at 629, 782 N.Y.S.2d

---

[4]Citations to "Def.'s Br." refer to Petitioner's Brief to the Appellate Division, dated March 2004.

[5]Prior to trial, defense counsel filed a motion challenging the basis for petitioner's arrest and seeking to suppress the knife and Ms. Harmon's identification. (Rodi Aff. at 3, n.2). The court denied the motion in its entirety. (Id.) Nothing relating to this motion appears to be raised in this petition.

at 656. Instead, the court stated: "'[T]o prevail on a claim of ineffective assistance, [the defendant] must demonstrate that [he was] deprived of a fair trial by less than meaningful representation; a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice.'" Id. (quoting People v. Benevento, 91 N.Y.2d 708, 713, 674 N.Y.S.2d 629, 632 (1998); People v. Flores, 84 N.Y.2d 184, 187, 615 N.Y.S.2d 662, 663 (1994)).

Petitioner then applied for leave to appeal to the New York State Court of Appeals. (Id. ¶ 11). His application was denied on December 4, 2004. People v. Acencio, 4 N.Y.3d 740, 790 N.Y.S.2d 653 (2004). On February 24, 2005, petitioner filed the instant petition for a writ of habeas corpus.


## DISCUSSION

A. Timeliness of Petition

The petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of the United States Code),[6] which provides that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This limitation, absent certain exceptions that do not apply to this case, runs from "the date on which the judgment became final by the conclusion of direct

---

[6]This case is governed by AEDPA's revisions to the law of habeas corpus because the petition was filed on February 24, 2005, after the effective date of the Act. See Williams v. Taylor, 529 U.S. 362, 402 (2000); see also Overton v. Newton, 146 F. Supp. 2d 267, 272 (E.D.N.Y. 2001), judgment rev'd on other grounds, 295 F.3d 270 (2d Cir. 2002).

review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). A conviction is deemed final for AEDPA purposes when the defendant's time to seek certiorari before the United States Supreme Court has expired. See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001).[7] Moreover, any "time during which a properly filed application for State post-conviction or other collateral review . . . is pending" is excluded from the calculation of the statute of limitations period. 28 U.S.C. § 2244(d)(2).

Here, petitioner's direct appeal to the Appellate Division was denied on October 18, 2004. People v. Acencio, 11 A.D.3d at 629, 782 N.Y.S.2d at 656. Petitioner's application for leave to appeal was denied by the Court of Appeals on December 4, 2004. See People v. Acencio, 4 N.Y.3d at 740, 790 N.Y.S.2d at 653. Under Rule 13 of the Rules of the Supreme Court of the United States, petitioner's conviction became final 90 days after the Court of Appeals issued its decision denying leave to appeal.[8] Thus, the conviction became final on March 4, 2005. The petition at issue, which was filed on February 24, 2005, was clearly filed within the one-year statute of limitations established by AEDPA. Accordingly, the petition is timely before this Court.

B. Exhaustion of Petitioner's Claims

Before considering the merits of petitioner's claims, this Court must first determine if petitioner has exhausted all available state court remedies and whether federal habeas review is

---

[7]If the defendant files a petition with the United States Supreme Court, the conviction is final when certiorari proceedings have concluded. Id.

[8]Rule 13 indicates that a petition for a writ of certiorari is timely when filed within 90 days after entry of judgment. The petitioner did not seek such relief.

permissible at this time. The respondent argues that petitioner has failed to fully exhaust several of his claims in state court and that he is therefore procedurally barred from pursuing these claims in this federal action. (Resp. Mem. at 10, 15-16, 20).[9] Specifically, respondent contends that petitioner failed to raise three claims before the state courts: (1) that his conviction was not proven beyond a reasonable doubt; (2) that the trial court improperly refused to give an alibi instruction to the jury; and (3) that he received ineffective assistance of counsel because his attorney did not ask for an instruction on intoxication. (Id.)

### 1) Standards - Exhaustion

A petition for a writ of habeas corpus may not be granted unless all available state court remedies have been exhausted. See 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275-76 (1971); Ellman v. Davis, 42 F.3d 144, 147 (2d Cir. 1994), cert. denied, 515 U.S. 1118 (1995). This rule is based on principles of comity between state and federal courts, and requires that the state be given "the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991); accord Picard v. Connor, 404 U.S. at 275-76. "To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'" Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) (quoting Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990)), cert. denied, 514 U.S. 1054 (1995). "'In order to have fairly presented his federal claim to the state courts[,] the petitioner must have informed the state court of both the factual and the

---

[9]Citations to "Resp. Mem." refer to the Memorandum of Law in Opposition to [the] Petition for a Writ of Habeas Corpus, dated August 9, 2005.

legal premises of the claim he asserts in federal court.'" Harmon v. People, No. 97 CV 2539, 1999 WL 458171, at *2 (E.D.N.Y. June 25, 1999) (quoting Daye v. Attorney Gen. of State of New York, 696 F.2d 186, 191 (2d Cir. 1982) (en banc)).

Petitioner satisfies the exhaustion requirement if he has presented his claim to the appropriate state courts in accordance with state procedural requirements, and has thereby "afford[ed] the state courts a meaningful opportunity to consider [the] allegations of legal error." Vasquez v. Hillery, 474 U.S. 254, 257 (1986) (internal citation omitted). Although some courts have insisted upon citation in the state pleadings to a specific clause of the Federal Constitution that is alleged to have been violated, courts in this Circuit have held that a claim may be "fairly present[ed] to the state courts . . . without citing chapter and verse of the Constitution" if there is "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis [in factually similar circumstances], (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Daye v. Attorney Gen. of State of New York, 696 F.2d at 194; accord Disimone v. Phillips, 461 F.3d 181 (2d Cir. 2006) (internal citations omitted); Jones v. Vacco, 126 F.3d 408, 413-14 (2d Cir. 1997) (holding that "[c]it[ation to] a specific constitutional provision or rel[iance] on federal constitutional precedents alerts state courts of the nature of the claim"); Williams v. Lord, 996 F.2d 1481, 1483 (2d Cir. 1993) (holding that petitioner had fully presented her claim to the state court where, "[a]lthough she did not cite specific constitutional provisions in her [state court] brief[,] . . . she explicitly asserted her constitutional right to present a defense . . . [and] cited a leading Supreme Court case in this area"), cert. denied, 510 U.S. 1120 (1994).

The legal claims raised in the state courts must also be the "substantial equivalent" of the claims raised in the federal petition. See Picard v. Connor, 404 U.S. at 278; accord Waterhouse v. Rodriguez, 848 F.2d 375, 381 (2d Cir. 1988) (noting that "[t]he legal theory relied upon in the federal court need not . . . be identical to the legal theory presented to the state courts, provided that the essential factual allegations and the ultimate constitutional question raised in the federal petition were presented to the state courts"). Once a federal claim has been properly presented to the state courts, the claim is considered exhausted even if the state court did not address the claim on the merits and instead rejected it on a state procedural ground, or did not rule on the claim on either substantive or procedural grounds, but nonetheless had a fair opportunity to address the claim. See, e.g., Coleman v. Thompson, 501 U.S. at 731-32; Castille v. Peoples, 489 U.S. 346, 350-51 (1989).

When analyzing whether a claim has been exhausted, the court "refers only to remedies still available at the time of the federal petition." Engle v. Issac, 456 U.S. 107, 125 n.28 (1982). If an avenue in the state courts is currently available, the federal court generally abstains from habeas review; "[c]onversely, of course, if no state procedure is available for raising any claims at the time a state prisoner applies for federal relief, the exhaustion requirement is satisfied." O'Sullivan v. Boerckel, 526 U.S. 838, 851-52 (Stevens, J., dissenting) (setting forth a general description of the differences between the doctrines of exhaustion and procedural default, with which the majority expressly noted agreement).

2) Standards - Procedural Default

Where a claim is unexhausted, the Court must address the problem of waiver or

9

procedural default. See Engle v. Isaac, 456 U.S. at 125 n.28; Francis v. Henderson, 425 U.S. 536 (1976). "[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Harris v. Reed, 489 U.S. 255, 263 n.9 (1989); see also Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Where a state procedural bar exists, the petitioner no longer has any "'remedies available in the courts of the State'" within the meaning of Section 2254(b). See Grey v. Hoke, 933 F.2d at 120 (quoting 28 U.S.C. § 2254(b)). However, it is well-established that a state procedural rule barring direct review suffices to bar federal habeas review absent a showing of cause and prejudice. Coleman v. Thompson, 501 U.S. at 750; see also Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (holding that a state procedural default provides an adequate basis for denying review of a prisoner's habeas petition unless the petitioner can show "'cause for the default and prejudice resulting therefrom'") (quoting Gonzalez v. Sullivan, 934 F.2d 419, 421 (2d Cir. 1991)); Booker v. Ricks, No. 02 CV 6456, 2006 WL 2239243, at *8 (E.D.N.Y. Aug. 4, 2006).

## C. Stay and Abeyance

Prior to the enactment of AEDPA, a federal court was not to consider the merits of a state prisoner's petitioner for a writ of habeas corpus until all state remedies had been exhausted. 28 U.S.C. § 2254(b), amended by Pub. L. No. 104-132, 110 Stat. 1214. Although the statute did not explicitly address "mixed" petitions, the Supreme Court in Rose v. Lundy, 455 U.S. 509 (1982), held that where a habeas corpus petition contains both exhausted claims and unexhausted claims, the federal court must dismiss the entire petition, not just the individual exhausted claims,

10

pending exhaustion of all claims or deletion of the unexhausted claims from the habeas petition. Id. at 520-22; see also Rhines v. Weber, 544 U.S. 269, 273-74 (2005) (discussing pre-AEDPA procedure for "mixed" petitions). The Court in Rose v. Lundy explained that the doctrine of complete exhaustion was "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." 455 U.S. at 518. Indeed, prior to AEDPA's passage, the Second Circuit made clear that "[p]assing on the merits of claims in a habeas petition containing unexhausted claims runs counter to Rose v. Lundy." Levine v. Commissioner of Corr. Servs., 44 F.3d at 125.

With the enactment of AEDPA, however, the "landscape for federal habeas corpus petitions" was "dramatically altered." Rhines v. Weber, 544 U.S. at 274. The exhaustion provisions of the statute were amended to provide that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Thus, with the passage of AEDPA, the court is now given discretion to deny unexhausted claims on the merits, although it is not required to do so. See 28 U.S.C. § 2254(b)(2), as amended. AEDPA also imposed a one-year statute of limitations on the filing of federal habeas petitions, making it possible for petitioners who file mixed petitions to "forever los[e] their opportunity for any federal review of their unexhausted claims" if the federal court dismisses their petitions after the statute of limitations expires. Rhines v. Weber, 544 U.S. at 274-75. Although Section 2244(d)(2) mandates that the limitations period is tolled during the pendency of applications for state post-conviction or collateral review, it is not tolled by the filing of a habeas petition. Id.

Thus, following the enactment of AEDPA, courts considering a petition with both

exhausted and unexhausted claims have: (1) stayed the mixed petition, see Zarvela v. Artuz, 254 F.3d 374, 380 (2d Cir.) (citing Freeman v. Page, 208 F.3d 572, 577 (7th Cir. 2000)), cert. denied, 534 U.S. 1015 (2001); (2) dismissed the mixed petition, see id. (citing Graham v. Johnson, 168 F.3d 762, 778 (5th Cir. 1999)); or (3) dismissed only the unexhausted claims and stayed the remaining claims. See id. (citing Calderon v. United States Dist. Court, 134 F.3d 981, 986-88 (9th Cir. 1998)). Having considered all three approaches, the Second Circuit in Zarvela v. Artuz concluded that a court "should exercise discretion either to [dismiss the unexhausted claims and] stay further proceedings on the remaining [exhausted] portion of the petition or to dismiss the petition in its entirety." Id. The Zarvela court concluded that staying an action would be "the only appropriate course" if "outright dismissal 'could jeopardize the timeliness of a collateral attack.'" Id. (internal citations omitted).

Concerned that granting a stay could allow a petitioner "an undue amount of time to pursue state court remedies," the Second Circuit instructed that if a court elects to stay a mixed petition, the court "should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed." Id. at 380-81. The Zarvela court instructed that if the petitioner fails to comply with either deadline, the court may vacate the stay nunc pro tunc as of the date the court entered the stay, and may dismiss the petition "unless the time the petitioner has taken to initiate exhaustion in the state courts and to return to federal court after exhaustion has not consumed more than the portion of the one-year limitations period that remained when the habeas petition was initially filed." Id.

Addressing the same issue in <u>Rhines v. Weber</u>, the Supreme Court noted that the procedure of "[s]tay and abeyance, if employed too frequently, has the potential to undermine the[ ] twin purposes" of AEDPA. 544 U.S. at 277. As the Supreme Court detailed:

> [s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

<u>Id.</u> As a consequence, the Supreme Court held that "stay and abeyance should be available only in limited circumstances." <u>Id.</u> If the "court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," then the court may grant a stay. <u>Id.</u> However, if the "unexhausted claims are plainly meritless," "the district court would abuse its discretion if it were to grant him a stay," even if the petitioner had established good cause for his failure to exhaust.[10] <u>Id.</u>

D. <u>Merits - Standards under AEDPA</u>

Under 28 U.S.C. § 2254, as amended by AEDPA, the authority of federal courts to grant writs of <u>habeas corpus</u> on the merits of claims filed by state prisoners is limited to instances in which it can be shown that the adjudication of a claim on the merits in state court (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

---

[10]Thus, courts in this Circuit have recently denied mixed petitions on the merits where the unexhausted claims "do not appear to have merit," <u>York v. Fischer</u>, No. 04 CV 1467, 2006 U.S. Dist. LEXIS 50225, at *18 (E.D.N.Y. July 21, 2006), are "so patently devoid of merit," <u>Brown v. Perlman</u>, No. 03 CV 2670, 2006 WL 2819654, at *3 (S.D.N.Y. Sept. 29, 2006), or are "plainly meritless." <u>Velez v. Ercole</u>, No. 06 CV 334, 2006 WL 2742046, at *4 (S.D.N.Y. Sept. 26, 2006).

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In Williams v. Taylor, 529 U.S. at 404-05, the Supreme Court indicated that the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. Id. Under the first prong, a state court decision is considered to be "contrary to" clearly established federal law where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or where the state court "confronts a set of facts that are materially indistinguishable" from those considered by the Supreme Court, but "nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 405-06; accord Overton v. Newton, 295 F.3d at 275; Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000). The precedent providing guidance in this analysis are "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Overton v. Newton, 295 F.3d at 275-76 (quoting Williams v. Taylor, 529 U.S. at 412).

Under the "unreasonable application" prong of Section 2254(d)(1), a state court decision will be set aside if it involves an "unreasonable application" of the correct governing legal rule to the particular facts of the case, see Williams v. Taylor, 529 U.S. at 407, 409; Overton v. Newton, 295 F.3d at 275, or if the decision "refuses to extend a legal principle that the Supreme Court has clearly established to a new situation in which it should govern." Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006) (citing Kennaugh v. Miller, 289 F.3d 36, 45 (2d Cir. 2002)). In conducting this analysis, the appropriate inquiry is whether the decision was objectively unreasonable, not merely whether it was incorrect or erroneous. Williams v. Taylor, 529 U.S. at

14

409-11. However, while "[s]ome increment of incorrectness beyond error is required[,] . . . [that] increment need not be great; otherwise, <u>habeas</u> relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal citation omitted); <u>accord</u> <u>Durant v. Strack</u>, 151 F. Supp. 2d 226, 234 (E.D.N.Y. 2001). In <u>Overton</u>, the Second Circuit, in interpreting <u>Williams</u>, reaffirmed its view that "the standard to be applied 'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'" 295 F.3d at 277 (quoting <u>Jones v. Stinson</u>, 229 F.3d at 119). The Second Circuit also acknowledged that "there has been considerable uncertainty as to how broadly or narrowly lower courts should construe principles defined by the Supreme Court in order to determine whether state courts have applied them reasonably." <u>Id.</u>

Under AEDPA, a state court's determination of a factual issue is "presumed to be correct," 28 U.S.C. § 2254(e)(1); <u>Overton v. Newton</u>, 295 F.3d at 275, and the petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Moreover, "a decision adjudicated on the merits in a state court and based on a *factual* determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)) (emphasis added).


E. <u>Application</u>

Having reviewed each of the petitioner's claims, the Court respectfully recommends that the petition for a writ of <u>habeas corpus</u> be denied in its entirety.

1) <u>Insufficient Evidence</u>

Petitioner's first claim is that his conviction for robbery in the second degree was not proven beyond a reasonable doubt because the "witness did not testify that the defendant had done anything other than block her path." (Pet'n at 5). Petitioner did not raise his claim that the evidence was insufficient to support his conviction during his direct appeal, and thus the claim was not appropriately exhausted. (<u>See</u> Resp. Mem. at 10; Def.'s Br. at 14-21; Def.'s Appl.[11] at 1-2); <u>see also</u> 28 U.S.C. § 2254(b)(1)(A); <u>O'Sullivan v. Boerckel</u>, 526 U.S. at 845 (holding that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); <u>Pesina v. Johnson</u>, 913 F.2d at 54 (stating that "the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition") (internal citation omitted).

However, this on-the-record claim is deemed exhausted and procedurally defaulted because petitioner failed to raise it in his direct appeal. <u>See</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90-91 (2d Cir. 2001). Petitioner may not seek leave to appeal and raise the issue at this time, because he has already made the one and only request for leave to appeal to which he is entitled under New York Court Rules. <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 22, § 500.20 (detailing process for submitting application for leave to appeal in a criminal case); <u>People v Nesbitt</u>, 211 A.D.2d 490, 621 N.Y.S.2d 867 (1st Dep't 1995) (holding that the "[d]enial of the application for permission to appeal by the judge or justice first applied to is final and no new application may

<hr>

[11]Citations to "Def.'s Appl." refer to Petitioner's Application for Leave to Appeal to the Court of Appeals, dated November 5, 2004.

thereafter be made to any other judge or justice"). Furthermore, collateral review by the state courts is barred due to petitioner's failure to raise this claim on direct review. See N.Y. Crim. Proc. Law § 440.10(2)(c) (providing that where "sufficient facts appear on the record of the proceedings underlying the judgment" to have allowed adequate review of the claim on appeal, but where "no such appellate review or determination occurred" because the defendant failed to raise the issue on appeal, the trial court must deny a motion to vacate judgment).

Respondent argues that the Court should not review the procedurally defaulted claim because petitioner has not alleged any cause for his failure to raise these issues on direct appeal or prejudice resulting therefrom, nor indicated that a fundamental miscarriage of justice will occur if the Court refuses to review the claim. (Resp. Mem. at 11); see Coleman v. Thompson, 501 U.S. at 750; Murray v. Carrier, 477 U.S. 478, 485, 495-96 (1986). Indeed, petitioner has not alleged that "'the factual or legal basis for [his] claim was not reasonably available to counsel, or that "some interference by officials" made compliance impracticable.'" Amadeo v. Zant, 486 U.S. 214, 222 (1988) (internal citations omitted). Moreover, petitioner has not made a claim that ineffective assistance of counsel was the reason behind his failure to raise this federal constitutional claim on appeal.[12] See Murray v. Carrier, 477 U.S. at 488. Finally, petitioner has not demonstrated that the "constitutional violation has probably resulted in the conviction of one who is actually innocent" in order to warrant consideration of his claim pursuant to the

---

[12]The Court notes that petitioner does not appear to have raised any claims of ineffective assistance of appellate counsel and that petitioner had different trial and appellate counsel. Even if petitioner were now to claim that trial counsel or appellate counsel was ineffective in this regard, those claims would not be cognizable in this habeas proceeding unless they had been first presented to the state courts and exhausted in their own right. See Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000).

17

"miscarriage of justice" exception. Id. at 496.

In any event, a review of the record of the proceedings before the trial court demonstrates that there is no merit to petitioner's claim that the evidence was legally insufficient to support his conviction. In assessing the legal sufficiency of a state criminal conviction, the habeas court should consider the evidence in the light most favorable to the prosecution, and must uphold the conviction so long as "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (internal citation omitted) (emphasis in original). In undertaking this analysis, the court must construe all inferences that may be drawn from the evidence in the prosecution's favor and defer to the jury's assessment of the credibility of witnesses. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (internal citations omitted).

Under New York Penal Law § 160.10[1], a person is guilty of second-degree robbery when he "forcibly steals property," and is "aided by another person actually present." N.Y. Penal Law § 160.10[1]. Even though the complainant Ms. Harmon testified that the petitioner did not have the knife in his possession and was not the individual who grabbed her bag (see Tr. at 216-20), the jury could reasonably have concluded that petitioner was guilty of robbery in the second degree under an "acting in concert" theory. The trial court instructed the jury that an individual may be found to be "acting in concert" with another, and thus criminally liable for the acts of the other person, "when [the individual,] acting with the state of mind required for the commission of that offense, . . . either solicits, requests, commands, importunes or intentionally aids such person to engage in . . . conduct [that constitutes an offense]." (Id. at 420-21).

Having reviewed the record below, this Court concludes that even if petitioner's claim

18

was not procedurally barred, it is without merit. A rational jury could clearly have found, if they credited Ms. Harmon's testimony, that petitioner approached Ms. Harmon with his co-defendant and then deliberately blocked her way, preventing her from escaping and thereby intentionally aiding his co-defendant in committing the robbery. Thus, the evidence was sufficient for the jury to find petitioner guilty of robbery in the second degree.

2) Alibi Instruction

Petitioner's second claim is that the trial court erred in failing to issue an alibi instruction. (Pet'n at 5). In essence, it appears that petitioner's claim is that because he testified that he was at home when the robbery occurred, the trial court should have instructed the jury as to an alibi defense. (See id.; Tr. at 309-10). Like petitioner's claim concerning the sufficiency of the evidence, it appears that this claim was not appropriately exhausted in petitioner's direct appeal. While a review of the record demonstrates that petitioner indicated in his brief to the Appellate Division that the "court was wrong" in indicating that the petitioner was not entitled to an alibi instruction, as "it is settled law that a defendant who testifies to his own alibi is entitled to an alibi instruction,"[13] he did not appear to allege that the trial court's error was itself a

_____

[13]Under New York law, a "defendant has *no* burden of proving an alibi to any degree," People v. Daniels, 88 A.D.2d 392, 403, 453 N.Y.S.2d 699, 705 (2d Dep't 1982) (citing cases), and the trial court is required to charge the jury that the burden rests with the prosecution to disprove an alibi defense beyond a reasonable doubt. See id. at 403, 453 N.Y.S.2d at 705-06. However, the failure to give an alibi instruction is not necessarily a constitutional violation under established federal law. In fact, this court has previously held that even where the evidence presented at trial was sufficient to warrant an alibi instruction, "[t]he absence of an alibi instruction . . . did not deprive petitioner of any constitutional rights." Sanders v. Scully, No. 90 CV 1058, 1991 WL 35498, at *1-2 (E.D.N.Y. Mar. 1, 1991). Rather, the petitioner must show that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process'" in order to establish a constitutional violation. Id. (internal citation

19

constitutional violation. (See Def.'s Br. at 17). Instead, petitioner raised the issue in connection with defense counsel's allegedly deficient performance in failing to request an alibi instruction at the charge conference. (Id.; see discussion infra at 32-33). Thus, petitioner failed to alert the state courts to the federal nature of his claim, and the claim is unexhausted.[14]

Since petitioner unjustifiably failed to raise this on-the-record claim on direct appeal, and any collateral motion on the issue would be barred under state law, see N.Y. Crim. Proc. Law § 440.10(2)(c); Cruz v. Berbary, 456 F. Supp. 2d 410, 414-15 (W.D.N.Y. 2006), this ground for review is procedurally defaulted and therefore deemed exhausted. Since petitioner has neither established cause for the default[15] nor indicated that a fundamental miscarriage of justice will occur if the Court does not consider the claim, habeas relief may not be granted on this ground. See Coleman v. Thompson, 501 U.S. at 750.

Irrespective of the procedural bar, petitioner's claim lacks merit. It is well-established that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, where a petitioner alleges that there has been an error in a jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated

---

omitted).

[14]While a defendant may alert the state court to the constitutional nature of a claim by relying on state cases employing constitutional analysis, see Daye v. Attorney Gen. of State of New York, 696 F.2d at 194, the state cases cited in petitioner's discussion of the alibi instruction appear insufficient in this regard. (See Def.'s Br. at 17 (citing People v. Holt, 67 N.Y.2d 819, 501 N.Y.S.2d 641 (1986); People v. Wiley, 120 A.D.2d 66, 507 N.Y.S.2d 928 (1986)).

[15]Since petitioner has not established cause for his default, the Court need not address the issue of prejudice.

some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v.

Naughten, 414 U.S. 141, 146 (1973); see also United States ex rel. Smith v. Montayne, 505 F.2d

1355, 1359 (2d Cir. 1974), cert. denied, 423 U.S. 856 (1975). Specifically, the Court must

determine whether the "'omission of an alibi charge . . . by itself so infected the trial that the

conviction violated due process.'" Connolly v. Artuz, No. 93 CV 4470, 1995 WL 561343, at *3

(E.D.N.Y. Sept. 15, 1995) (quoting Guzman v. Scully, No. 92 CV 5175, 1995 WL 135590, at *5

(S.D.N.Y. Mar. 29, 1995)); see also Grey v. Henderson, 788 F. Supp. 683, 693 (E.D.N.Y. 1991)

(quoting Cupp v. Naughten, 414 U.S. at 147), aff'd, 956 F.2d 1161 (2d Cir. 1992). "An

omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the

law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

Under the circumstances in this case, where the trial court repeatedly instructed the jury

that the prosecution had the burden of establishing the guilt of each defendant beyond a

reasonable doubt (see, e.g., Tr. at 409, 415-17, 422, 425-27, 429-31),[16] this Court finds that the

trial court's failure to give a specific instruction about petitioner's alibi did not so infect the trial

as to violate petitioner's due process rights. See Sanders v. Scully, 1991 WL 35498, at *1-2

(holding that the petitioner's constitutional rights had not been violated by the trial court's refusal

_____

[16]At one point, the trial court specifically stated: "In determining whether [the People] have satisfied their burden of proving the guilt of the defendant beyond a reasonable doubt[,] you may consider all of the evidence presented, whether it was presented by the People or whether it was presented by the defense. In doing so, however, remember that even when the defendant introduces evidence, the burden still remains with the People. A defendant doesn't have to prove he is not guilty. Defendant is not required to prove or disprove anything. To the contrary, the People have the burden of establishing beyond a reasonable doubt the guilt of the defendant. That means before you can find the defendant guilty, the People have to prove all of the elements of the crime, everything that makes up that crime, the People have to prove it to the jury's satisfaction beyond a reasonable doubt and also that the defendant is the one who committed the crime." (Tr. at 415-16).

to issue an alibi instruction, where the jury instructions made clear that "the jury must acquit if the evidence raised a reasonable doubt about any of the elements of the crimes charged").

### 3) Unexhausted Bases for Claim of Ineffective Assistance of Counsel

Petitioner's third claim seeks habeas relief based on various assertions of ineffective assistance of counsel. To the extent that petitioner alleges that defense counsel was ineffective for failing to elicit helpful evidence, failing to properly execute a misidentification defense, failing to request an alibi instruction or charge on identification,[17] and delivering a deficient summation (Pet'n at 5-6, 8), the claims were adequately raised before the state courts and have therefore been fully exhausted. (Def.'s Br. at 14-21; Def.'s Appl. at 1-2). However, petitioner also claims, apparently for the first time, that his trial counsel was ineffective because he failed to request that the trial court issue an intoxication instruction and failed to move for severance. (See Pet'n at 8; Resp. Mem. at 21).

#### (a) Intoxication Instruction

Respondent contends that since petitioner failed to exhaust his claim concerning the intoxication instruction, and because he no longer has any procedure by which to raise the claim in state court, the claim is barred from habeas review. (Resp. Mem. at 23). Indeed, "[a]n assertion in state court of ineffective assistance of counsel does not exhaust all possible bases of an ineffective assistance of counsel claim . . . [but rather] only those specific bases that are raised

---

[17]While petitioner's habeas submission does not specifically mention the charge on identification, the Court has considered the issue as appropriately raised in the petition pursuant to his assertion that trial counsel "failed to request essential jury instructions." (Pet'n at 5).

in state court." Gibbs v. New York, No. 01 CV 5046, 2002 U.S. Dist. LEXIS 25102, at *28

(S.D.N.Y. Sept. 11, 2002) (internal citations omitted) (Report and Recommendation adopted by

Gibbs v. New York, No. 01 CV 5046, 2002 U.S. Dist. LEXIS 23922 (S.D.N.Y. Dec. 11, 2002));

see also Jones v. Conway, 442 F. Supp. 2d 113, 123 (S.D.N.Y. 2006); Minor v. Henderson, 754

F. Supp. 1010, 1020 (S.D.N.Y. 1990) (gathering cases). Since the facts necessary to assert this

basis for petitioner's ineffective assistance of counsel claim were contained in the trial record,

and because petitioner unjustifiably failed to raise the issue in the one direct appeal to which he is

entitled, petitioner's claim is procedurally defaulted. See Sweet v. Bennett, 353 F.3d 135, 139-

41 (2d Cir. 2003) (finding ineffective assistance of counsel claim procedurally defaulted where

"appellate counsel unjustifiably failed to argue [the claim] on direct appeal despite a sufficient

record, and consequently waived the claim under § 440.10(2)(c)"). Therefore, because the

petitioner has not established, nor even alleged, any cause for the default or actual prejudice, and

has not indicated that the Court will effectuate a fundamental miscarriage of justice if it refuses

to review the claim, this basis for petitioner's ineffective assistance of counsel claim is barred

from habeas review. See Coleman v. Thompson, 501 U.S. at 750

At any rate, the claim is clearly without merit. In order to establish a claim of ineffective

assistance of counsel, a petitioner must establish: (1) that trial counsel's performance was

deficient in that "counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment," and (2) that this deficient performance prejudiced the defense in that the

"errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

Strickland v. Washington, 466 U.S. 668, 687 (1984). "[B]ecause it is 'past question that the rule

set forth in Strickland qualifies as clearly established Federal law, as determined by the Supreme

23

Court of the United States,'" an ineffective assistance of counsel claim "is analyzed under the 'unreasonable application' clause of AEDPA." Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006) (internal citations omitted), cert. denied, 127 S. Ct. 1383 (2007). Furthermore, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland v. Washington, 466 U.S. at 697.

In determining whether counsel's performance was deficient, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," and determine whether the acts or omissions identified by the petitioner "were outside the wide range of professionally competent assistance." Id. at 690. The habeas petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (internal citation omitted). Generally, a petitioner can "demonstrate that trial counsel's decisions were objectively unreasonable only if 'there [was] no . . . tactical justification for the course taken.'" Lynn v. Bliden, 443 F.3d at 241 (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam)). Indeed, counsel is "strongly presumed to have rendered adequate assistance," Strickland v. Washington, 466 U.S. at 690, and "[t]hat presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam) (internal citation omitted).

To satisfy the prejudice requirement of the Strickland test, petitioner must show that

24

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694. "'The level of prejudice the [petitioner] need demonstrate lies between prejudice that had some conceivable effect and prejudice that more likely than not altered the outcome in the case.'" Lynn v. Bliden, 443 F.3d at 247 (quoting Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001)); see also Aparicio v. Artuz, 269 F.3d at 95 (indicating that a "reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal").

Having reviewed the testimony elicited at trial, it is clear that even if petitioner had not procedurally defaulted on his claim concerning the intoxication instruction, he would be unable to demonstrate that counsel's decision not to request such a charge was a strategic decision outside the range of reasonable professional assistance or that such a decision was sufficiently prejudicial. There was no evidence presented at trial to suggest that petitioner was intoxicated at the time of the incident. Rather than testifying that he was intoxicated during the incident, petitioner testified that he was not even present at the location where the robbery occurred. (See Tr. at 309-10). Specifically, the petitioner testified that he was at home the entire evening on which the robbery occurred, thereby implying that the victim had misidentified him as the second perpetrator. (See id.) In light of petitioner's testimony that he was not present at the time of the robbery, an intoxication charge reflecting on petitioner's state of mind would have been irrelevant and confusing to the jury. Thus, given the absence of any evidence to support an intoxication defense, it is unlikely that the trial court would have given such a charge even if it had been requested. In this manner, petitioner's procedurally defaulted claim is devoid of merit.

25

(b) Failure to Move for Severance

Petitioner's claim that counsel was ineffective because he failed to move for severance (Pet'n at 8) is also unexhausted.[18] Moreover, the claim is procedurally defaulted because petitioner did not raise the issue on direct appeal despite the fact that the Appellate Division could have evaluated the claim based solely on the trial record, and this Court may not review the claim since petitioner has neither alleged any cause for the default or actual prejudice, nor indicated that a fundamental miscarriage of justice will occur in the absence of habeas review. See Coleman v. Thompson, 501 U.S. at 750; Sweet v. Bennett, 353 F.3d at 139-41. In any event, the claim is meritless, as petitioner has not established a reasonable probability that the outcome of the proceeding would have been different if counsel had filed the severance motion.

4) Exhausted Bases for Claim of Ineffective Assistance of Counsel

As to the remaining arguments raised in support of petitioner's claim of ineffective assistance of counsel, these arguments were considered by the Appellate Division and rejected on their merits. Thus, they have been appropriately exhausted. The Appellate Division held that "[c]ontrary to the defendant's contention, he was not deprived of his right to the effective assistance of trial counsel." People v. Acencio, 11 A.D.3d at 629, 782 N.Y.S.2d at 656 (internal citations omitted). Moreover, the state court clearly applied the appropriate standard for analyzing an ineffective assistance of counsel claim, noting that the defendant must show he was

---

[18]While appellate counsel indicated that "it was essential that counsel distance [the petitioner] from Bonilla" because the "case against Bonilla was much stronger," appellate counsel did not indicate that trial counsel should have filed a motion for severance, but rather that counsel should have mentioned "the distinction in the strength of the cases." (See Def.'s Br. at 20).

"deprived of a fair trial by less than meaningful representation." Id. (internal citations omitted).

While the Appellate Division cited People v. Baldi, 54 N.Y.2d 137, 147, 444 N.Y.S.2d 893, 898

(1981),[19] the Second Circuit has held that the standard set forth in Baldi is not "'diametrically

different, opposite in character or nature, or mutually opposed to the standard articulated in

Strickland.'" Eze v. Senkowski, 321 F.3d 110, 123-24 (2d Cir. 2003) (internal citations and

quotation marks omitted).[20] Thus, petitioner can prevail on his claim of ineffective assistance of

counsel only if he can show that the decision issued by the Appellate Division involved an

"unreasonable application" of the clearly established federal law set forth by the Supreme Court

in Strickland.


### (a) Misidentification Defense

The Court has reviewed each of the exhausted bases for petitioner's ineffective assistance

of counsel claim, and finds that the Appellate Division's decision denying petitioner's appeal

was not objectively unreasonable. To begin, a review of the record demonstrates that, contrary to

---

[19]In People v. Baldi, the New York State Court of Appeals held that "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met." Id. (internal citations omitted).

[20]The Court notes that the Second Circuit has, in dicta, recently questioned whether the New York ineffective assistance of counsel standard is "contrary to" federal law as set forth in Strickland. See Henry v. Poole, 409 F.3d 48, 69-71 (2d Cir. 2005), cert. denied, 126 S. Ct. 1622 (2006). Specifically, the Second Circuit noted that "'whereas both tests contain a prejudice component, the touchstone of the New York test is "the fairness of the process as a whole," . . . while the federal test considers the outcome of the proceeding for the defendant.'" Id. at 70 (internal citations omitted). Having considered the Second Circuit's reasoning in Henry v. Poole, the Court declines to depart from the governing law as set forth in Eze v. Senkowski. See Remy v. Graham, No. 06 CV 3637, 2007 WL 496442, at *5 (E.D.N.Y. Feb. 12, 2007). Nonetheless, the Court notes that petitioner's claim would fail even if reviewed under a *de novo* standard.

petitioner's allegations, defense counsel vigorously pursued the misidentification defense. Counsel established that it was 1:00 a.m. when the robbery occurred, that it was dark outside at that time, and that the grocery store near the payphone was closed. (Tr. at 247-48). When cross-examining Ms. Harmon, defense counsel questioned her description of the second perpetrator as having a "very roundish, it almost seemed puffy face" in light of the fact that petitioner apparently appeared to have a more narrow face at the time of the trial. (See id. at 256-57, 315-16). In his summation, counsel raised additional questions regarding potential inconsistencies in the victim's testimony concerning the lighting conditions during the incident and photographic evidence depicting the crime scene. (Id. at 217, 366-67). Defense counsel then assailed the victim's credibility by challenging the reasonableness of her failure to wait for the police to respond to the scene after alerting them that she had seen one of the perpetrators. (Id. at 368). Counsel's summation further challenged Ms. Harmon's vague descriptions of the perpetrators, noting that she did not provide any descriptions of the bicycles they were riding during the commission of the robbery, and contending that the description provided by Ms. Harmon "meets about a million kids in Queens County." (See id. at 369). Finally, counsel argued that his own client's testimony established that the petitioner was at home (id. at 370), confirming that Ms. Harmon had misidentified him as one of the perpetrators.

Although petitioner argued on appeal that trial counsel's "execution of his misidentification strategy was . . . clueless" because counsel conducted only a perfunctory cross-examination of Ms. Harmon and failed to ask questions about her focus during the robbery or the duration of the incident, there were few specific arguments made in petitioner's appellate brief on appeal as to other areas of questioning that should have been pursued by trial counsel in support

28

of the misidentification defense. (See Def's. Br. at 15-17). The petitioner's habeas submission also does not elaborate upon his allegation that the execution of the misidentification defense was "clueless" except to note that counsel should have highlighted the fact that Ms. Harmon's identification of the petitioner was far weaker than her identification of his co-defendant. (Pet'n at 9). Thus, having reviewed the record, the Court is hard-pressed to find that the Appellate Division applied Strickland in an objectively unreasonable manner.

### (b) Counsel's Summation

Petitioner's allegations concerning the inadequacy of counsel's summation, namely that his trial counsel's summation "did not address the evidence supporting the defense" and was "improper . . . with respect to the witness['s] alleged recognition"[21] (id. at 5, 6), are also insufficient to merit habeas relief. On direct appeal, petitioner criticized counsel for focusing on the fact that the witness was very angry about being robbed without arguing certain other facts that supported the defense of misidentification. (Def.'s Br. at 18-20). First, it is possible that a victim's state of mind following a robbery could affect the reliability of a subsequent identification, and thus counsel's line of questioning on this issue was not an unreasonable tactic to pursue as part of a misidentification defense. Moreover, as discussed above, defense counsel's summation did in fact highlight certain evidence supporting petitioner's misidentification

---

[21]While it is unclear precisely what the petitioner is referring to in his allegation that the summation was "improper," the Court has treated the claim as restating his complaint concerning the adequacy of the summation relative to the misidentification defense. It may also refer to certain allegedly inflammatory comments made by counsel, including an analogy to the various types of reactions to the World Trade Center attacks (Def.'s Br. at 20), which the Court has also addressed as part of that broad claim.

defense. Thus, the Court concludes that it was not objectively unreasonable for the Appellate Division to determine that defense counsel's summation did not constitute ineffective assistance of counsel.

### (c) Failure to Elicit Helpful Evidence

As to petitioner's claim that counsel was ineffective for failing to elicit helpful evidence, it is clear that the decision as to which questions to pursue during the examination of witnesses is appropriately characterized as a matter of trial strategy. Appellate counsel argued that Ms. Harmon should have been questioned more thoroughly concerning the duration of the incident, her focus during the robbery, and her inability to observe the petitioner while her attention was directed to the man with the knife. (See Def.'s Br. at 15-16). However, there is no evidence to suggest that the witness's answers would have been helpful to the defense; instead, they may have served merely to reenforce her conviction as to the identification. Moreover, as a general matter, "strategic choices made [by counsel] after thorough investigation of [the] law and facts . . . are virtually unchallengeable," and the Supreme Court has cautioned that when reviewing a claim of ineffective assistance of counsel, the reviewing court should attempt to "eliminate the distorting effects of hindsight." Strickland v. Washington, 466 U.S. at 689-90. Counsel's strategic decision as to which questions to ask the complainant were well within the bounds of competent representation. Therefore, the Court finds that the appellate court's decision denying petitioner relief on this ground was not an objectively unreasonable application of federal law as set forth in Strickland.

(d) <u>Identification Instruction</u>

Petitioner also alleges that his trial counsel was ineffective because he failed to request a charge on identification.[22] (Pet'n at 5). Petitioner argued in his direct appeal that a charge on identification[23] was appropriate in this instance "[g]iven that the only evidence supporting a conviction was the testimony of the one eyewitness." (Def.'s Br. at 17). The trial court instructed the jury that "the People have to prove all of the elements of the crime, everything that makes up that crime, the People have to prove it to the jury's satisfaction beyond a reasonable doubt and also that the defendant is the one who committed the crime." (Tr. at 415-16). The Court further instructed the jury: "It's your job to determine which evidence is reliable, which evidence is truthful. You must decide whether a witness is telling the truth and that they're

_____

[22] As previously indicated, the Court has interpreted petitioner's allegation that his trial counsel "failed to request essential jury instructions" (Pet'n at 5) to incorporate the claim that counsel failed to a request a charge on identification, a claim that was previously raised in petitioner's brief to the Appellate Division. (Def.'s Br. at 9-10, 17-18).

[23] Petitioner's appellate counsel referred to the charge on identification as a "<u>Daniels</u> instruction" without providing any citation for the case to which she was referring. (Def.'s Br. at 17). However, it is likely that counsel was referring to <u>People v. Daniels</u>, 88 A.D.2d 392, 453 N.Y.S.2d 699 (2d Dep't 1982). There, the Second Department indicated that the situation present in <u>Daniels</u> was "the situation found in many, if not most, pure identification cases. The eyewitnesses are usually firmly convinced that they are telling the truth and neither cross-examination nor endless polygraph tests will ever shake that belief. Bitter experience tells us, however, that the real issue is whether or not the witness is mistaken – however honest or truthful that mistake might be. Although defense counsel's request for an appropriate identification charge was couched in language that was woefully inadequate and grossly insufficient, the court, confronted by these truly extraordinary circumstances, and given the contradictory nature of the eyewitness testimony, should have charged that in weighing the evidence on the issue of identification, the jury should focus on accuracy as well as veracity." <u>People v. Daniels</u>, 88 A.D.2d at 400, 453 N.Y.S.2d 699 at 704 (finding that the trial court's instruction that the "'ultimate question of the truthfulness of the witnesses' testimony is for [the jury] to decide'" was fundamentally flawed because it was "clear that the issue was not whether [the witness] was telling the truth, but whether or not he was mistaken").

31

accurate or instead, are they testifying falsely or are they mistaken?"[24] (Id. at 410). Moreover, counsel reiterated during summation that his client testified that he was at home on the evening of the robbery. (Id. at 370).

Having considered the circumstances surrounding the jury instruction, the Court finds that petitioner has failed to establish a reasonable probability that the outcome of the proceeding would have been different had counsel requested the identification instruction. See Newton v. Burge, 436 F. Supp. 2d 589, 597 (W.D.N.Y. 2006) (noting that "[g]iven the instructions to the jury and counsel's argument on summation that it was not [the petitioner] who perpetrated the [crime], the Court cannot find that there is a 'reasonable probability' that the inclusion of a specific identification instruction would have altered the outcome of the case"). Thus, the Appellate Division's decision was not an objectively unreasonable application of Strickland.

### (e) Alibi Instruction

Petitioner further contends that counsel's failure to request an alibi instruction constituted ineffective assistance of counsel. (Pet'n at 8). Although appellate counsel relied on People v. Wiley, 120 A.D.2d 66, 67-68, 71, 507 N.Y.S.2d 928, 929-31 (4th Dep't 1986), to argue that trial counsel's failure to request an alibi charge was relevant to a finding of ineffective assistance of counsel (Def.'s Br. at 17), counsel's brief did not address the Second Department's more recent

---

[24]As to the jury's evaluation of each witness's testimony, the court instructed the jury, among other things, that they "may consider whether a witness's testimony is consistent with the testimony of other witnesses or with other evidence in the case" and that they "may consider whether the testimony of a witness fails to conform to the facts as they occurred because the witness, on purpose, is telling a lie or because the witness didn't really have a chance to see or hear that which they're testifying to or because the witness was not able to express themselves clearly in giving their testimony here in the courtroom." (Id. at 412-13).

decision in <u>People v. Frye</u>, 210 A.D.2d 503, 620 N.Y.S.2d 993 (2d Dep't 1994). There, the Second Department found that the failure to request an alibi charge did not render counsel's representation ineffective, since it could have been a strategic decision, where "the defendant's alibi was seriously undermined by evidence adduced at trial." <u>See People v. Frye</u>, 210 A.D.2d at 503-504, 620 N.Y.S.2d at 994 (internal citations omitted). Moreover, the Second Department has held that an attorney's decision not to request an alibi charge may be considered a reasonable strategic decision where the evidence in support of the alleged alibi consists solely of the defendant's testimony that he was home alone at the time of the incident. <u>See People v. Scott</u>, 283 A.D.2d 525, 526, 727 N.Y.S.2d 442, 443 (2d Dep't 2001). At any rate, since the trial court explicitly instructed the jury that the burden of proof remained on the prosecution even when the defense presented certain evidence (Tr. at 415), the petitioner has not demonstrated the requisite prejudice to prevail on the second prong of the <u>Strickland</u> inquiry. Therefore, the Court concludes that the state appellate court did not apply the <u>Strickland</u> standard in an objectively unreasonable manner.

In sum, the Court concludes that a review of the record demonstrates that petitioner received representation that was well within the wide range of reasonable professional assistance, and that there is no basis on which to conclude that the Appellate Division's application of <u>Strickland</u> to the facts at hand was objectively unreasonable.


## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the petition for a writ of <u>habeas corpus</u> be denied in its entirety. The Court further respectfully recommends that

petitioner be denied a certificate of appealability, as he has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Middleton v. Attorneys Gen. of States of N.Y. and Pa., 396 F.3d 207, 209 (2d Cir. 2005) (noting that to merit the issuance of a certificate of appealability, a petitioner "must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal citations and quotation marks omitted).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
June 13, 2007

Cheryl L. Pollak
United States Magistrate Judge

34